UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MICHAEL BROWN,                                            Docket No.:    CV-18-570(FB)(PK)

                                    Plaintiff,
                                                         **AMENDED COMPLAINT**

            -against-

CITY OF NEW YORK, JOSEPH VENEZIANO          **JURY TRIAL DEMANDED**
and RAYMOND SPINELLA, *in their individual
and official capacities,*

                                    Defendants.
------------------------------------------------------------------X

        Plaintiff, MICHAEL BROWN, by and through his attorneys, FAMIGHETTI &

WEINICK, P.L.L.C., complaining of Defendants herein, alleges upon knowledge as to himself

and his own actions and upon information and belief as to all other matters, as follows:


                        **PRELIMINARY STATEMENT**

        1.      This is a civil rights action for monetary damages and injunctive relief against

Defendants, their agents and employees, for committing acts under color of law and depriving

Plaintiff of rights secured by the Constitution and laws of the United States of America and the

State of New York by intentionally taking numerous adverse employment actions against

Plaintiff, in part, because of his refusal to comply with Defendant Veneziano's persistent

demands to withdraw, falsify, and or alter properly classified felony complaints reported in the

New York City Police Department's ("NYPD") crime statistic reports, and which were made in

furtherance of the NYPD's widespread and systematic manipulation of COMPSTAT statistics,

        2.      The adverse actions taken against Plaintiff include inter alia: (1) isolating,

intimidating and creating a hostile work environment for Plaintiff; (2) transferring Plaintiff to a

1

precinct assignment significantly further away from his home, resulting in a longer and more expensive commute to work; (3) lodging disciplinary charges against Plaintiff; (4) placing Plaintiff on an continuous performance/disciplinary monitoring program; (5) lowering Plaintiff's evaluations; and (6) denying Plaintiff numerous warranted promotions.

## JURISDICTION AND VENUE

3.      Jurisdiction in this matter is founded upon 28 U.S.C. §§ 1331 and 1343 and the aforementioned statutory and constitutional provisions.   Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. § 1367 to hear and decide claims arising under state and local law.

4.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to Plaintiff's claims occurred within this judicial district.

## PARTIES

5.      Plaintiff MICHAEL BROWN was and is a citizen of the United States and resident of the State of New York, County of Richmond.  Further, during the relevant times, Plaintiff was and is a New York City Police Officer employed by the NYPD as a Lieutenant.

6.      Defendant CITY OF NEW YORK ("CITY") was and is a municipality organized and existing under the laws of the State of New York.  The NYPD was and is a department, agency or "arm" of the CITY.

7.     At all relevant times, Defendant CITY was and is responsible for the control of the NYPD, its agents and employees, including but not limited to Defendants JOSEPH VENEZIANO ("Veneziano") and RAYMOND SPINELLA ("Spinella").

8.     At all relevant times, Defendant Veneziano was and is a citizen of the State of New York, employed by the NYPD as the 122nd precinct Captain, also known as a precinct commander, and was responsible for ensuring the proper maintenance and operation of the 122nd precinct, guiding subordinate employees, and ensuring that employees performed their administrative and operational responsibilities within he 122nd precinct efficiently and according to the proper and lawful procedure.

9.     Additionally, Defendant Veneziano was a policymaker for the NYPD, and had the responsibility of ensuring that subordinate employees were not subjected to unlawful employment practices, including but not limited to, harassment and or retaliation.

10.     Defendant Veneziano aided, abetted, incited, compelled, coerced and or otherwise participated in the unlawful conduct set forth below

11.     At all relevant times, Defendant Spinella was employed by the NYPD, and in his position as Chief of Personnel for the NYPD, he was responsible for the management of personnel recruitment and management of the human resource functions of the NYPD.  The Chief of Personnel also has the duty to manage all of the other approximate 55,000 members of the NYPD and is responsible for properly monitoring and assessing, training and developing, and providing proper employee assistance to subordinate employees

12.     Defendant Spinella aided, abetted, incited, compelled, coerced and or otherwise participated in the unlawful conduct set forth below.  Further, Defendant Spinella's acquiescence to such unlawful conduct furthered the NYPD's practice, policy, and or custom of retaliating

against its employees who disclose information about the NYPD's unlawful crime manipulation and employment practices.

## FACTS

**A.      Background Information on Corruption Within the NYPD**

13.     The NYPD maps crime to identify problem areas through an accountability process known as COMPSTAT.

14.     COMPSTAT tracks the seven major crimes of Murder, Rape, Robbery, Felony Assault, Burglary, Grand Larceny, and Grand Larceny Auto.

15.     Misdemeanors are not counted among the seven major crime categories cited in crime statistics by COMPSTAT.

16.     COMPSTAT obtains data, which includes specific crimes within enforcement areas, from the various police boroughs to compile statistical summaries of crime and arrest activity on city wide, borough wide, and precinct wide levels.

17.     A goal of COMPSTAT is to hold NYPD's commanding officers accountable for their efforts to control crime in their assigned boroughs and precinct.

**B.      Plaintiff's Exemplary Career in the NYPD**

18.     Plaintiff began his employment with the NYPD in July 1996 as a police officer.

19.     In March of 1997, Plaintiff graduated from the police academy and was assigned to the Transit Bronx Task Force until November 1997.  From November 1997 to March 2000, Plaintiff was assigned to the Transit Manhattan Task Force, and from March 2000 to March 2002, Plaintiff was assigned to Transit District 3.

20.     In March 2002, Plaintiff received a promotion from the position of police officer to the position of sergeant and was assigned to the 24th precinct from April 2002 to July 2003, and from July 2003 to December 2006, Plaintiff was assigned to the Central Park precinct.

21.     In December 2006, Plaintiff received a promotion from the position of sergeant to the position of lieutenant and remained at the Central Park precinct until February 2007.  From February 2007 to September 2007, Plaintiff was assigned to the 84th precinct.

22.     In September 2007, Plaintiff was chosen by the chief of the NYPD's Internal Affairs Bureau ("IAB"), Charles Campisi to work at IAB.

23.     Chief Campisi chose Plaintiff to work at the internal affairs bureau because of his exemplary and "clean" employment record.

24.     Chief Campisi stated to Plaintiff that working for IAB would "enhance" his career, and that after two years with IAB, Plaintiff would be permitted to transfer to any open assignment within the NYPD.

25.     Plaintiff was assigned to IAB from September 2007 to March 2011.

26.     On March 31, 2011, Plaintiff chose to, and was transferred to the 122nd precinct located in New Dorp, Staten Island, which was close to his home.

27.     As set forth in more detail below, until Defendant Veneziano became Plaintiff's commanding officer, which was over a decade after Plaintiff had been hired by the NYPD, Plaintiff maintained an unblemished employment record and had not received a command discipline or a substandard performance evaluation rating.

**C.      Plaintiff Witnesses Defendants Illegal Practice of Crime Statistics Manipulation**

28.     In July 2011, shortly after Plaintiff's transfer to the 122nd Precinct in Staten Island, Defendant Veneziano was named the Commanding Officer, making him the highest-

ranking NYPD member in the precinct at the time and responsible for all NYPD operations pertaining to the 122nd precinct, including all employment related matters within the precinct.

29.     Almost immediately after Defendant Veneziano became the commanding officer at the 122nd precinct, Plaintiff began to observe a pattern and practice of Defendant Veneziano to regularly and intentionally downgrade crimes.

30.     Specifically, Plaintiff began to observe that Defendant Veneziano would improperly misclassify crime complaints as misdemeanors or violations when instead, they should have been classified as a felony, and reported as part of COMPSTAT's requirements.

31.     For example, Defendant Veneziano intentionally left out and/or falsified pertinent information in paperwork in order to mischaracterize felonies as misdemeanors and or violations or he would refuse to take and or enter a complaint report all together, which lawfully should have been taken and reported.

32.     Indeed, multiple NYPD officers have spoken out about this practice and or custom of the NYPD, such as Sergeant Robert Borelli formerly of the 100th Precinct in Queens, Police Officer Adrian Schoolcraft formerly of the 81st Precinct in Brooklyn and Adil Polanco formerly of the 41st Precinct in the Bronx.  All of the aforementioned officers experienced retaliation by the NYPD for documenting and or disclosing the NYPD's corruptive practices and including the NYPD's established illegal quota system.

**D.     Defendant Veneziano Ordered Plaintiff to Manipulate Crime Statistics**

33.     On numerous occasions, beginning in or around November 2011 and continuing, while employed at the 122nd precinct, Defendant Veneziano ordered Plaintiff into his office and demanded that Plaintiff justify the classification of felony crimes that he reported on NYPD issued complaints also referred to as "61's."

6

34. Complaint reports are generated by a police officer who responded to a 911 call or whenever a crime is reported.

35. A police officer writes up the report and classifies the crime as either a felony, a misdemeanor, or a violation, which the officer does based on witness statements and his knowledge of the New York State Penal Law.

36. The officer also provides a narrative, name, and rank of a supervisor that was on the scene at the time that the offense occurred.

37. Plaintiff than reviews the report to make sure it is accurate, complete and properly classified in accordance to the provisions of the New York State Penal Law.

38. After Plaintiff reviews the 61, the desk officer reviews, signs and enters the complaint report into the NYPD system so that crime analysis systems, such as COMPSTAT, can track the report.

39. Thus, under most circumstances and when the proper procedure is followed, after the Plaintiff and the desk officer approve a police officer's crime report, it is then entered into the crime analysis system and no further action is taken.

40. On numerous occasions, beginning in or around November 2011 and continuing until Plaintiff was transferred to the Bronx Housing Bureau, while employed at the 122nd precinct as the Captain, Defendant Veneziano ordered Plaintiff to attend meetings in his office and demanded that he withdraw, falsify and or alter certain crimes classified and reported by Plaintiff as a felony and demanded that he change such reports to reflect a misdemeanor or a violation.

41.     However, the crimes that Defendant Veneziano requested Plaintiff alter and underreport, were properly classified and indeed, approved by Plaintiff and the desk officer in accordance to established policies and procedures set forth by the NYPD.

42.     Accordingly Plaintiff refused to comply with Defendant Veneziano's demands to falsify and submit fraudulent crime reports.

43.     Also during this time, Defendant Veneziano ordered various subordinate police officers from the 122nd precinct, including Officer James McGlynn and Officer Mathew Nawalsky to change the classification of felony crimes, properly reported on NYPD issued complaint reports, to misdemeanors.

44.     In fact, Defendant Veneziano, without the consent or knowledge of Plaintiff or any other officer assigned to the 122nd precinct, would routinely order the desk officer, to falsify and change the classification of crimes reported by Plaintiff and other officers as felonies to either misdemeanors or violations, although the crimes had been properly classified and reported as a felony.

E.     **Plaintiff Refused to Comply with Defendants Orders to Misclassify and Underreport Certain Crimes**

45.     In or around December 2011, as a result of Plaintiff's "non-compliance," as discussed above, Plaintiff began to be scrutinized and increasingly pressured and implicitly threatened by his supervisors to withdraw, falsify and or alter properly reported crime reports, required by COMPSTAT.

46.     Notwithstanding Defendant Veneziano's persistent demands to withdraw, falsify and or change crime reports, Plaintiff continued to refuse.

47.     Thereafter, in or around December 2011, as a result of Plaintiff's "non-compliance," Defendant Veneziano began to implicitly threaten Plaintiff with retaliation if he continued to refuse to comply with his demands to underreport and misclassify certain crimes.

48.     Specifically, in an aggressive and threatening tone, Defendant Veneziano stated that he would be "watching" Plaintiff and the way that Plaintiff classified crimes on complaint reports.

49.     Given the unlawful nature of Defendant's persistent demands and Plaintiff's continuous refusal to comply, Plaintiff took this to mean that Defendant Veneziano was "watching" him so he could write Plaintiff up or issue him a command discipline.

50.     Additionally, because of Plaintiff's refusal to comply with Defendant Venziano's orders to underreport and manipulate crime reports, Defendant Veneziano began to accuse Plaintiff of purportedly failing to perform his duties by "failing to issue complaint reports."

51.     This accusation, however, was false.

52.     For example, in or around November 2012, during a supervisors' meeting, a complaint report regarding a stolen granite countertop worth $3000 was discussed.  A felony complaint report for grand larceny was taken, and many of the supervisors stated that this classification was appropriate.

53.     However, Defendant Veneziano disagreed and stated that the report should not have been taken at all.

54.     The complaint report was never created entered into the NYPD computer system or was created and was not permitted to be entered by Defendant Veneziano.

55.     In or about November 2012, Plaintiff was told by a PBA delegate that at least two other officers complained to IAB about the destruction and or misclassification of complaint reports.

56.     As a result of these complaints, the Quality Assurance Division ("QAD") opened an investigation into the destruction and or misclassification of complaint reports at the 122nd precinct.

57.     In or around December 2012, a citizen came to the 122nd precinct and asked for the report number for a police report taken about power tools that were stolen out of his shed in his yard.

58.     Plaintiff checked the file room for paper copies of the complaint report and checked the 122nd precinct computer to see if a report was entered.  Plaintiff could not locate the complaint report or complaint report number.

59.     As such records are generally and regularly retrievable, the apparent non-existence of any records whatsoever pertaining to this complaint report, either paper or electronic, suggests that the records were destroyed, as Plaintiff had witnessed happening in other circumstances.

60.     Plaintiff ordered two officers to go to the citizens' house to take a second complaint report for the burglary.

61.     The next day, Defendant Veneziano called Plaintiff into his office and issued him a command discipline.

62.     This was the first command discipline Plaintiff received at the 122nd precinct and was purportedly issued for an unrelated matter, however, Defendant Veneziano made it clear to Plaintiff that the command discipline was actually issued to Plaintiff because he ordered two

officers to take the felony complaint report that he did not want taken and which did not comply with his previous orders concerning crime classification

63.     A command discipline is a form of discipline for misconduct but usually results in a much less serious form of discipline, if any discipline is issued at all (entry in the minor violations log), and it occurs just a few days after Plaintiff issued a crime complaint which Veneziano then ordered purged from the NYPD's records.

64.     In other words, these facts suggest that Defendant Veneziano disciplined Plaintiff for ordering the second complaint report.

65.     In or around January 2013, Sergeant Ernest Urbina, told Plaintiff that a complaint report was taken for a GPS unit that was stolen out of a car that was parked inside the owner's garage.

66.     Plaintiff told Sergeant Urbina that the report should be taken and classified as a burglary in the second degree, a class C felony because the GPS was stolen from the vehicle which was located inside the owner's garage/dwelling.

67.     Again, Plaintiff refused to comply with Defendant Veneziano's demands to falsify and submit fraudulent crime reports.

68.     Following Plaintiff's instruction to classify the reported crime by Sergeant Urbina as a felony, Defendant Veneziano ordered Sergeant Urbina to take the complaint report but to classify the crime as a petit larceny, a class A misdemeanor.

69.     In other words, Defendant Veneziano downgraded the crime from a felony to a misdemeanor.

70.     The complaint report was ultimately taken by Sergeant Urbina as a petit larceny, as ordered by Defendant Veneziano, and not as a class C felony as suggested by Plaintiff and the NYS Penal Law.

71.     Because Plaintiff was uncomfortable accepting the crime report as written and improperly classifying the crime, Plaintiff wrote on the complaint report "Complaint classified by Captain Veneziano."

72.     The following day, Defendant Veneziano told Sergeant Urbina that he was upset with Plaintiff because of what he wrote on the complaint report.

73.     Moreover, Defendant Veneziano refused to allow the complaint report to be logged into the NYPD system.

74.     Shortly thereafter, the evidence collection unit responded to the owner's garage and checked for fingerprints and DNA evidence.

75.     Plaintiff received numerous calls from the evidence collection unit, telling him that the fingerprints and DNA found at the scene of the crime could not be processed because the complaint report had not been entered into the NYPD computer system.

76.     Later, the car's owner came to the 122nd precinct to obtain a copy of the complaint report but was turned away because the complaint report had not been entered into the NYPD computer system.

77.     Plaintiff searched for a paper copy of the report but it did not exist.

78.     Plaintiff searched the computer system but the complaint report did not exist.

79.     The crime analysis sergeant, Sergeant Daniel Massey, suggested that Plaintiff send someone to the complainant's home to take the complaint report again, in other words, for a third time.

**F.** **Plaintiff's First Complaint to IAB Resulted in an Increased Hostile Work Environment**

80.    On or about February 27, 2013, Plaintiff contacted IAB, stating that he had reason to believe that Defendant Veneziano was destroying complaint reports, changing complaint reports, or failing to take and enter complaint reports.

81.    A few days after Plaintiff made this complaint to IAB, Defendant Veneziano confronted Plaintiff about his complaint and statements that he made to IAB.  Specifically, Defendant Veneziano denied that he destroyed crime reports.

82.    In other words, IAB failed to comply with their explicit duty to keep complaints confidential and effectively alerted Defendant Veneziano of Plaintiff's complaints, which were made against him and which disclosed Defendant Veneziano's unlawful pattern and practice  of manipulating crime reports.

83.    Approximately two weeks after Plaintiff contacted IAB, New York City Corporation Counsel requested that Plaintiff and Police Officer Dana Nunez come to corporation counsel's office to discuss a pending lawsuit against the City.

84.    On the day of the meeting with corporation counsel, Officer Nunez and Plaintiff drove from Plaintiff's home in Staten Island to corporation counsel's offices in Manhattan.  At the conclusion of the meeting, Officer Nunez drove Plaintiff back to his home.

85.    Upon his return home, Plaintiff called the 122nd precinct and spoke to Sergeant Urbina, the desk sergeant.  Plaintiff requested that Sergeant Urbina file a "28," which is an NYPD form used to process vacation time, which Plaintiff intended to use for the day he was summoned to meet with the Corporation Counsel so that his vacation time would be deducted to account for the remainder of the day off.

86.    Plaintiff requested that Sergeant Urbina fill out the "28" and submit it for him.

13

87.     Sergeant Urbina asked Defendant Veneziano if he could file the "28" for Plaintiff to account for the remainder of the day.  Defendant Veneziano approved the request.

88.     However, after telling Sergeant Urbina that he would approve Plaintiff's request to file the "28," Defendant Veneziano contacted IAB and falsely stated that Plaintiff was "absent from his assignment."

89.     Further, as a result of IAB's breach of their core duty of confidentiality, as discussed above, Defendant Veneziano made it known around the 122nd precinct that Plaintiff cooperated with QAD and IAB, and made complaints against him including Plaintiff's disclosure of the NYPD's widespread and systematic practice of crime manipulation.

90.     Defendant Veneziano's comment to other officers in the 122nd precinct, ultimately caused distrust among Plaintiff's co-workers, and effectively separated and isolated him from his precinct co-workers.

91.     In or around, April 2013, Plaintiff's annual evaluation was prepared by Captain Avis Washington, who gave Plaintiff a "meets standards" rating.

92.     Shortly thereafter, Plaintiff was reviewed by Defendant Veneziano, who changed the rating to "below standard."

93.     Notably, prior to complaining to IAB and QAD about Defendant Veneziano's practice of misclassifying and underreporting crimes, Plaintiff was always rated "meets standards" or better.

94.     As a result of the "below standard" evaluation, Defendant Veneziano recommended that Plaintiff be placed on performance monitoring by the NYPD's Performance Monitoring Unit ("PMU"), and was indeed placed on Level II performance monitoring.

95. In April 2013, In addition to the increased supervision because of the Level II monitoring, Defendant Veneziano transferred Plaintiff out of the 122nd precinct in Staten Island to the Bronx Housing bureau located in the Bronx.

96. Because of this transfer, Plaintiff's commute went from 15 minutes to 2 hours and his travel expenses to get to work increased.

97. Further, an officer on Level II monitoring will not receive a promotion and may receive increased scrutiny from other units within the NYPD.

**G.   Plaintiff's Second Complaint to IAB**

98. In or around April 2013, approximately two months after Plaintiff had first contacted IAB   and complained about defendant Veneziano's pattern and practice of underreporting crimes and misclassifying crime reports, Plaintiff contacted IAB for a second time, but this time he made a different although somewhat related complaint against Defendant Veneziano.

99. Specifically, Plaintiff's second complaint to IAB was that Defendant Veneziano retaliated against him because of his first complaint to IAB, which was unlawfully leaked to Defendant Veneziano.

100. IAB opened an investigation into Plaintiff's complaints of retaliation, and assigned IAB Log #'s 2013-15614 and 2013-16648.

101. Plaintiff was told that an investigator from IAB would come to Plaintiff's home to take a formal statement concerning his allegations of retaliation.

102. However, no one from IAB ever came to Plaintiff's house to take his statement, and Plaintiff is still unaware of the outcome of the IAB investigation, if any.

103.   Defendant's failure to inform Plaintiff of the status and or result of his previous complaint made against Defendant Veneziano, resulted in Defendants maintaining the Department's widespread and systematic unlawful crime manipulation practice.

104.   In about May 2013, Plaintiff received a call from a lieutenant from the NYPD's employee relations section.  Plaintiff was asked if there was anything that could be done to mitigate the effects of the retaliation.

105.   Plaintiff requested that he be transferred back to the 122nd precinct.  The request was denied and Plaintiff was told by the lieutenant from the employees relations section that IAB would not allow the transfer.

## H.   Defendants Failed to Promote Plaintiff After His Second Complaint to IAB

106.   When Plaintiff arrived at Bronx Housing, his Commanding Officer was Inspector Eddie Lott.

107.   Inspector Lott stated to Plaintiff that he received a phone call telling him to "watch out" for Plaintiff.  Inspector Lott refused to tell Plaintiff who this person was.

108.   In June 2013, an officer under Plaintiff's supervision located a missing seven year old child.  Lieutenants are not required to notify their superiors when a missing child is found. However, Plaintiff was issued a command discipline for failing to notify his superiors about finding the missing child.

109.   Chief Joanne Jaffe told Captain John Wilson, Plaintiff's supervisor, who in turn told Plaintiff, that the command discipline was issued because Plaintiff was "one of the lieutenants that were transferred from Staten Island."

110.   In November 2014, Plaintiff took and passed the civil service examination number 4543 for the position of Captain and was placed on the promotional hiring list at #47.

111.    In November 2015, Police Officer Archer from the Performance Monitoring Unit, told Plaintiff that before he could be promoted to Captain, he would have to be approved by the Career Advancement Review Board ("CARB") because he had received disciplinary charges within the previous five years.

112.    As part of the process for CARB to approve Plaintiff's promotion to captain, he is required to be recommended by his commanding officer and to submit a recent evaluation.

113.    In November 2015, Plaintiff's commanding officer of Bronx Housing, Deputy Inspector Vanessa Kight recommended him for promotion to Captain.

114.    Additionally during this time Plaintiff received an evaluation from Captain Dewkoemar Mohan who rated him a 3 "meeting standards".

115.    Plaintiff was interviewed by CARB, and CARB reviewed the recommendation for promotion, the evaluation, and other information.

116.    Approximately two weeks after interviewing with CARB, Officer Archer told Plaintiff that CARB was placing his promotion on hold for three months.

117.    In February 2016, Plaintiff sat for a second interview before CARB.

118.    Deputy Inspector Kight again recommended Plaintiff for promotion.

119.    Captain Mohan prepared another evaluation for Plaintiff and rated him 3.5 "Above Standards," which was approved by Inspector Kight.

120.    Approximately two weeks after interviewing with CARB, for a second time, Officer Archer contacted Plaintiff and told him that CARB was placing his promotion on hold, this time for six months.

121.    This promotion hold occurred despite the recommendation of Deputy Inspector Kight and an above average evaluation.

122.   In August 2016, Plaintiff sat for a third interview before CARB.

123.   At this time, Captain Julie Moril was the commanding officer of PSA 8.

124.   Captain Moril highly recommended Plaintiff for promotion and rated him a 4.0, which is considered "Well Above Standards."

125.   Approximately two weeks after interviewing with CARB, for the third time, Officer Archer contacted Plaintiff and told him that CARB was placing his promotion on hold, for an additional six months.

126.   By the time of this third hold, Plaintiff had strived to maintain years of unblemished work performance and the last time he had been issued any form discipline whatsoever was in June 2013, which was more than three years ago.

127.    There was no legitimate reason to delay Plaintiff's promotion, particularly in light of the excellent evaluations received in his position and the glowing recommendations of high ranking officials, including a Captain and a Deputy Inspector.

128.   In February 2017, Plaintiff sat for a fourth interview before CARB.

129.   Commanding Officer, Captain Moril again, highly recommended Plaintiff for promotion, and again rated him a 4.0 representing a "Well Above Standards" evaluation.

130.   Approximately two weeks after interviewing with CARB, for a fourth time, PO Archer told Plaintiff that CARB was denying the promotion.

131.   PO Archer also told Plaintiff that this fourth promotion denial was a final decision and not subject to further challenge or review.

132.   It is not the practice of CARB to deny a promotion to someone who was on two occasions "highly recommended" from a supervisor and who on two occasions received a "Well

Above Standards" rating in back to back evaluations nor is there any legitimate business reason to have done so here.

133.   Specifically, based on the facts detailed above, it can be reasonably inferred that Plaintiff was denied the promotion because of his refusal to comply with Defendant Veneziano's previous persistent demands to withdraw, falsify, and or alter certain crime reports and which was ordered in furtherance of the NYPD's systematic practice and or custom of manipulating crime statistic reports and underreporting felony crimes, in an attempt to avoid such crimes being reported to COMPSTAT.

## CLAIMS FOR RELIEF

### AS AND FOR A FIRST CLAIM
*CONSTITUTIONAL VIOLATIONS*
*42 U.S.C. § 1983*
*First Amendment Right to Free Speech*

134.   As the aforementioned states, Plaintiff engaged in constitutionally protected activity by, among other things, opposing and refusing to comply with Defendant Veneziano's widespread and systematic pattern and or practice of misconduct, including Defendant Veneziano's demands to manipulate crime reports and change such reports to misdemeanors and or violations when instead, such crimes should have been reported under COMPSTAT as a felony.

135.   Motivated by Plaintiff's protected activities, as discussed above, Defendants took numerous adverse actions against Plaintiff, including without limitation, transferring, and placing Plaintiff on a performance monitoring program, and derailing Plaintiff's career by failing to promote him to Captain of the NYPD.

## AS AND FOR A SECOND CLAIM
*MONELL* CLAIM FOR FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE
42 U.S.C. § 1983
*AGAINST CITY AND NYPD*

136.   Acting under color of law, Defendant City and its agency, the NYPD, did knowingly, recklessly, or with gross negligence fail to train, instruct, supervise, control, and or otherwise discipline Defendant's Veneziano and Spinella, for failing to comply with their duty to refrain from unlawfully and maliciously retaliating against Plaintiff and or other employees for having engaged in constitutionally protected activities.

137.   The acts complained of were carried out by the aforementioned individual defendants in their capacity as an officer in the NYPD, pursuant to the customs, usages, practices, procedures or rules of the City of New York and the NYPD, all under the supervision of ranking officers of the NYPD.

138.   The aforementioned customs, policies, usages, practices, procedures and Rules of the City and the NYPD, including but not limited to: 1) isolating plaintiff from his co-workers in the 122nd precinct; 2) intimidating Plaintiff by threats and acts of coercion including Veneziano's comment about "watching" Plaintiff; 3)  transferring Plaintiff to the Bronx Housing Bureau and creating a longer and more expensive commute; 4) lodging disciplinary charges against Plaintiff; 5) placing Plaintiff on a continuous performance/disciplinary monitoring program; 6) lowering Plaintiff's evaluations; and 7) denying Plaintiff numerous warranted promotions.

139.   Further, the aforementioned customs, policies, usages, practices, procedures and Rules of the City and the NYPD, indicate Defendant City's deliberate indifference of disciplining NYPD employees and failing to, at least, investigate retaliation complaints and or other improper conduct complaints.

140.   At all relevant times, Defendants Veneziano and Spinella acted under color of state law, in their individual and official capacities, and pursuant to the scope of their employment with the NYPD.  Such acts by Defendant Veneziano and Defendant Spinella were willful, wanton and knowing, and done specifically to deprive Plaintiff of his constitutional rights, remedies, privileges and immunities as discussed above.

141.   Moreover, at all relevant times, Defendant Veneziano and Defendant Spinella were policy makers acting on behalf of the City and NYPD and had the authority to make decisions and or policies regarding the treatment of subordinate employees.

142.   Accordingly, Defendants' actions in retaliating against Plaintiff were taken pursuant to the NYPD's official policy, practice and or custom based in part because Plaintiff disclosed the NYPD's unlawful crime manipulation practice.

143.   As a direct and proximate result of Defendant's adverse actions taken against Plaintiff, including failing to promote Plaintiff to the position of Captain of the Department, Plaintiff suffered and continues to suffer actual damages, including but not limited to loss of past and future earnings.

## AS AND FOR A THIRD CLAIM
### INDIVIDUAL SUPERVISORY LIABILITY
42 U.S.C. §1983
*AGAINST VENEZIANO and SPINELLA*

144.   Defendants Veneziano and Spinella, while acting under the color of state law, subjected Plaintiff to the deprivation of rights, privileges and immunities secured by the constitution and laws of the United States by unlawfully participating in and/or permitting the aforementioned unlawful conduct to perpetuate, without abatement and in violation of Plaintiff's constitutional and statutory rights pursuant to 42 U.S.C. § 1983.

21

145.   Further, the NYPD and Defendant City, failed to properly investigate and or address allegations of a hostile work environment and claims of retaliation at least in part because Plaintiff refused to be a part of the widespread and systematic corruption within the NYPD and instead, complained about said conduct.

### AS AND FOR A FOURTH CLAIM
NEW YORK STATE CONSTITUTIONAL VIOLATIONS
ARTICLE I, SECTIONS 6, and 8
*AGAINST VENEZIANO and SPINELLA*

146.   The acts and omissions of the individual defendants as set forth above were undertaken under color of state law, ordinance, regulation, custom, or usage and operated to deprive Plaintiff of his constitutional right to due process in violation of Article I, Section 6 of the Constitution of the State of New York.  Defendant's Veneziano and Spinella are jointly and severally liable in their individual and/or official capacity.

147.   The acts and omissions of the individual defendants as set forth above were undertaken under color of state law, ordinance, regulation, custom, or usage and operated to deprive Plaintiff of his constitutional right to free speech in violation of Article I, Section 8 of the Constitution of the State of New York.  Defendant Veneziano and Spinella are jointly and severally liable in their individual and/or official capacity.

### AS AND FOR A FIFTH CLAIM
NEGLIGENT RETENTION OF AN UNFIT EMPLOYEE
*AGAINST CITY and NYPD*

148.   As set forth above, Defendant City and the NYPD deliberately retained and or advanced the career of Defendant Veneziano within the NYPD despite knowing that Plaintiff had complained to IAB and stated, among other things, that Defendant Veneziano instructed

Plaintiff and other subordinates to withdraw, falsify, and or alter or otherwise misclassify felony crime complaints.

149.   As set forth above, Defendant City and the NYPD deliberately retained and or advanced the career of Defendant Spinella despite Defendant City's knowledge and or reason to believe, based in part by Defendant Spinella's failure to investigate and or take appropriate action after Plaintiff complained about Defendant Veneziano's improper manipulation of crime reports.

150.   Accordingly, Defendant City and the NYPD should have at least supervised Defendant Spinella more closely or otherwise modified and or limited his current responsibilities within the NYPD, because of his failure to comply with his own responsibilities as Chief of Personnel, including his duty to properly monitor and assess the training and development of subordinate employees.

151.   Instead, however, Defendant City ultimately rewarded Defendant Spinella for his furtherance of the NYPD's aforementioned misconduct by promoting him to serve as Chief of Staff, one of the highest ranking positions in the NYPD.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

**WHEREFORE,** Plaintiff demands judgment against Defendants, where applicable, for all compensatory, emotional, physical, and punitive damages (where applicable), lost pay, loss of benefits, injunctive relief, and any other damages permitted by law to be determined by the triers of fact on behalf of Plaintiff and against all Defendants jointly and severally for their violations

of 42 U.S.C. § 1983, the New York State Constitution and New York State Civil Service Law.  It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.  Plaintiff demands a trial by jury.

Dated: Melville, New York
         August 24, 2018

                                        Respectfully submitted,

                                        FAMIGHETTI & WEINICK, PLLC
                                        *Attorneys for Plaintiff*
                                        25 Melville Park Road, Suite 235
                                        Melville, New York 11746
                                        (631) 352-0050


                                        *Peter J. Famighetti*
                                           Peter J. Famighetti

24